# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Miscellaneous Action No. 22-mc-_____

SECURITIES AND EXCHANGE COMMISSION,

    Petitioner,

v.

BRUCE CONWAY,
ELIZABETH CONWAY, and
MERRITT CONWAY,

    Respondents.

## APPLICATION FOR ORDER TO SHOW CAUSE AND FOR ORDER COMPELLING COMPLIANCE WITH ADMINISTRATIVE SUBPOENAS

The Securities and Exchange Commission is investigating whether Bruce Conway illegally traded securities based on material nonpublic information. In furtherance of its investigation, the SEC served administrative subpoenas seeking testimony and documents from Mr. Conway. In addition, because some of Mr. Conway's trades were made in the accounts of his wife and daughter, Elizabeth and Merritt Conway, the SEC issued subpoenas seeking documents from them.

The Conways refused to comply with the Commission's subpoenas.

The Commission respectfully requests that the Court: (1) issue an Order to Show Cause why Bruce Conway, Elizabeth Conway, and Merritt Conway should not be compelled to comply with the SEC's administrative subpoenas; and (2) following notice and an opportunity to be heard, order the Conways to comply with the Commission's subpoenas.

## BACKGROUND

The Securities and Exchange Commission ("Commission" or "SEC") is investigating possible illegal trading on material nonpublic information in the securities of Cancer Genetics, Inc. ("Cancer Genetics," or "CGIX"). On June 15, 2021, the SEC issued an Order Directing Private Investigation and Designating Officers to Take Testimony in an investigation entitled *In the Matter of Trading in the Securities of Cancer Genetics, Inc.*. Declaration of Michael Hoke ("Hoke Decl.") ¶ 4 & Ex. 1 (the "Formal Order").

The Formal Order was issued pursuant to Sections 21(a) and (b) of the Securities Exchange Act of 1934 ("Exchange Act"). In the Exchange Act, Congress authorized the Commission to investigate potential violations of the securities laws, 15 U.S.C. § 78u(a)(1), and to designate officers within the agency to, among other things, issue subpoenas and take evidence for the purpose of such investigations, *id.* § 78u(b). Congress also authorized the presidentially appointed SEC commissioners to delegate certain functions, 15 U.S.C. § 78d-1(a), and they have done so. The Commission has delegated to the Director of the Division of Enforcement the authority to, among other things, order the investigation of potential violations of the federal securities laws and designate other staff as officers authorized to issue subpoenas and take evidence for the purpose of such investigations. 17 C.F.R. § 200.30-4(a)(13), (a)(1); *see also id.* § 200.30-4 (authorizing others designated by the SEC Chairman to perform delegated functions under the direction of the Director of Enforcement).

The Formal Order initiating the Cancer Genetics investigation was approved for the Division of Enforcement by the Associate Regional Director in charge of the SEC's enforcement

program in Denver and was ratified by the Director of Enforcement. Hoke Decl. ¶ 4 & Exs. 1, 2. The Director's ratification states in part:

> The Commission is conducting investigations pursuant to the Orders Directing Private Investigation and Designating Officers to Take Testimony listed in Appendix A ("Formal Orders"). The staff—who are subject to my supervision in all of these matters—acted lawfully and properly in taking actions pursuant to the Formal Orders, and I am accountable for those actions. Nevertheless, out of an abundance of caution and for the avoidance of any doubt, I hereby affirm and ratify the Formal Orders, as well as any and all actions that staff have taken in these investigations.

Hoke Decl. Ex. 2.

The Formal Order designates certain Commission staff as officers authorized to, among other things, issue subpoenas and take evidence for purposes of the investigation authorized by the Formal Order. Hoke Decl. ¶ 4 & Ex. 1. Following the ratification of the Formal Order by the Director of Enforcement, a member of the SEC staff designated in the Formal Order issued subpoenas to Bruce Conway, Elizabeth Conway, and Merritt Conway. Hoke Decl. ¶¶ 10, 14, 16, 20, 21 & Exs. 4, 5, 6, 7, 9, 10, 11.

The SEC issued these subpoenas because the SEC is investigating whether Bruce Conway traded in CGIX securities on the basis of material nonpublic information in violation of federal securities laws. Hoke Decl. ¶¶ 7, 10, 14. Before markets opened on August 24, 2020, Cancer Genetics announced a merger with StemoniX, Inc., a privately held company. *Id.* ¶¶ 8-9. In the month before the merger was announced, Mr. Conway began purchasing CGIX stock, and the SEC has reason to believe that, at the time of his purchases, Mr. Conway may have been in possession of material nonpublic information concerning Cancer Genetics' merger with StemoniX. *Id.* ¶¶ 7-8. Following the merger announcement, CGIX's stock price rose, and Mr. Conway began selling CGIX stock. *Id.* ¶ 9.

On March 16, and July 8, 2022, the SEC staff served subpoenas seeking documents from Mr. Conway related to, among other things, his knowledge of and communications concerning Cancer Genetics and StemoniX, any agreement not to trade on his knowledge about the companies' potential merger, his trading in CGIX securities in his own accounts, and trusts and accounts held for the benefit of others in which the SEC staff believe Mr. Conway may have traded or directed trading in CGIX securities. Hoke Decl. ¶¶ 10, 21 & Exs. 4, 9. Mr. Conway produced only a handful of documents in response to the March 16 subpoena, and he produced no documents in response to the July 8 subpoena. Hoke Decl. ¶¶ 11, 13, 22, 27.

On July 8, 2022, the SEC staff served subpoenas seeking documents from Elizabeth Conway and Merritt Conway concerning, among other things, trading in CGIX securities in their accounts. Hoke Decl. ¶ 21 & Exs. 10, 11. Neither Elizabeth Conway nor Merritt Conway produced any documents in response to these subpoenas. Hoke Decl. ¶¶ 28-29.

On June 27, 2022, the SEC staff served a subpoena for testimony from Mr. Conway. Hoke Decl. ¶ 20 & Ex. 7.[1] The subpoena required Mr. Conway to appear for testimony at the Commission's Denver Regional Office on July 22, 2022, Hoke Decl. ¶ 20 & Ex. 7, a date on

---

[1] This was the third subpoena for Mr. Conway's testimony issued in furtherance of the investigation authorized by the Formal Order. The first subpoena for testimony was served through counsel on June 9, 2022. Hoke Decl. ¶ 14 & Ex. 5. The SEC received no response to this subpoena and had received no response to several attempts to contact counsel over a period of weeks both before and after the subpoena was issued. *Id.* ¶¶ 13-15. The SEC staff therefore served a second subpoena for testimony on Mr. Conway, personally, on June 15, 2022, which finally prompted a response from Mr. Conway's counsel, who stated that the staff should communicate through them. *Id.* ¶¶ 16-17 & Ex. 6. Shortly before the June 27 testimony date, Mr. Conway's counsel telephoned the SEC staff to say that they could not attend on the 27th. *Id.* ¶ 18. The third subpoena, served on Mr. Conway through counsel, followed. *Id.* ¶ 20 & Ex. 7.

which Mr. Conway's counsel represented that Mr. Conway would be available, Hoke Decl. ¶ 19. Mr. Conway did not appear for testimony as required by the subpoena. Hoke Decl. ¶ 26.

Two days before Mr. Conway's scheduled testimony, and three months after receiving a copy of the Formal Order, the Conways' counsel sent a letter refusing to comply with the subpoenas. Hoke Decl. ¶ 23 & Ex. 12. Counsel stated that they "respectfully defer responding" to the subpoenas until after the staff confirmed in writing "that the Formal Order that authorized the investigation was lawfully issued in accordance with constitutional and statutory requirements." Hoke Decl. Ex. 12 at 1-2. Counsel also asserted that the SEC staff members designated as "officers" in the Formal Order, including the staff member who issued the subpoenas, were "'officers' within the meaning of Article II's Appointments Clause," and questioned whether they had been properly appointed and whether they enjoyed "'good-cause' protection from removal by the President." *Id.* at 2.

The staff responded and confirmed that the Formal Order and the subpoenas that were issued pursuant to that Order were lawfully issued. Hoke Decl. ¶ 24 & Ex. 13. The staff also explained that staff members named in the Formal Order were not constitutional "Officers of the United States" under the Appointments Clause. Hoke Decl. Ex. 13. The staff requested confirmation from the Conways' counsel by August 10, 2022, that their clients would comply with the subpoenas. *Id.* The Conways' counsel did not respond, Hoke Decl. ¶ 25, and this action followed.

5

## ARGUMENT

**I. The Court Has Jurisdiction Over this Miscellaneous Action.**

The Court has jurisdiction over this subpoena enforcement action pursuant to Section 21(c) of the Exchange Act. 15 U.S.C. § 78u(c). The SEC's investigation is being conducted by the Denver Regional Office, Hoke Decl. ¶ 5, and jurisdiction and venue are therefore appropriate in this district "within the jurisdiction of which such investigation . . . is carried on," 15 U.S.C. § 78u(c).

The SEC respectfully requests that its application be considered promptly in a summary proceeding. "Federal securities law authorizes the SEC to seek an order from this Court requiring compliance with a subpoena in a summary proceeding." *SEC v. Harman Wright Grp., LLC*, No. 18-mc-00190-CMA, 2018 WL 6102758, at *2 (D. Colo. Nov. 21, 2018) (citing, *inter alia*, 15 U.S.C. § 78u(e); Fed. R. Civ. P. 81(a)(5)), *aff'd*, 777 F. App'x 276 (10th Cir. 2019). "Further, a prompt ruling on the SEC's application is warranted to avoid further delay in the investigation." *Id.* (citing *SEC v. Lavin*, 111 F.3d 921, 926 (D.C. Cir. 1997); *SEC v. First Sec. Bank*, 447 F.2d 166, 168 (10th Cir. 1971)).

**II. The Court Should Enforce the Administrative Subpoenas.**

Under well-established Supreme Court and Tenth Circuit precedent, this Court should enforce the SEC's administrative subpoenas because: (1) the investigation will be conducted pursuant to a legitimate purpose; (2) the subpoenas seek information that may be relevant to that purpose; (3) the information sought is not already in the SEC's possession; and (4) all required administrative steps have been followed. *Harman Wright Grp.*, 2018 WL 6102758, at *2 (citing *United States v. Powell*, 379 U.S. 48, 57-58 (1964); *RNR Enter., Inc. v. SEC*, 122 F.3d 93, 96 (2d

6

Cir. 1997); *Application to Enforce Administrative Subpoenas Duces Tecum of SEC v. Knowles*, 87 F.3d 413, 415 (10th Cir. 1996)). The SEC's burden under this framework is a "'slight one,' and '[t]he requisite showing is generally made by affidavit of the agent who issued the summons and who is seeking enforcement.'" *Id.* (quoting *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1443 (10th Cir. 1985) (internal quotations omitted)).

Because the SEC readily satisfies its burden, the Court should enforce the Commission's administrative subpoenas. *See, e.g.*, *Resolution Trust Corp. v. Thornton*, 41 F.3d 1539, 1544 (D.C. Cir. 1994) ("If an agency's subpoena satisfies these requirements, we *must* enforce it.") (emphasis added) (citing, *inter alia*, *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950)); *see also, e.g.*, *SEC v. Blackfoot Bituminous, Inc.*, 622 F.2d 512, 515-16 (10th Cir. 1980) (affirming district court orders enforcing SEC subpoenas); *SEC v. First Sec. Bank of Utah, N.A.*, 447 F.2d 166, 167-69 (10th Cir. 1971) (same); *SEC v. Kimmel*, No. 19-mc-00113-CMA, 2020 WL 2800813, at *5 (D. Colo. May 29, 2020) (compelling respondent to comply with SEC administrative subpoenas); *Harman Wright Grp.*, 2018 WL 6102758, at *3 (same); *SEC v. Nields*, No. 04-D-2628 (MJW), 2005 WL 8171861, at *1-2 (D. Colo. Aug. 3, 2005) (denying motion for reconsideration of order enforcing SEC administrative subpoena).

*First*, the Commission's investigation is being conducted pursuant to a legitimate purpose. "Congress has vested the [SEC] with broad authority to conduct investigations into possible violations of the federal securities laws and to demand production of evidence relevant to such investigations." *SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984). The Formal Order pursuant to which the subpoenas were issued authorizes just such an investigation into

possible violations of the federal securities laws, *to wit*, possible trading in the securities of Cancer Genetics on the basis of material nonpublic information. Hoke Decl. Ex. 1.

*Second*, the subpoenas seek information that may be relevant to the SEC's legitimate purpose in investigating possible violations of the securities laws. "Administrative agencies vested with investigatory power have broad discretion to require the disclosure of information concerning matters within their jurisdiction." *Philips Petroleum Co. v. Lujan*, 951 F.2d 257, 260 (10th Cir. 1991). Relevance is established when the information sought is not "plainly incompetent or irrelevant to any lawful purpose." *Endicott Johnson Corp. v. Perkins*, 317 U.S. 501, 509 (1943) (cited in *Philips Petroleum*, 951 F.2d at 260). The subpoenas seek documents and testimony concerning Bruce Conway's trading in CGIX securities and the accounts in which trading occurred. Hoke Decl. ¶¶ 7-10, 14, 21. That information is relevant to the SEC's investigation into possible trading in CGIX securities on the basis of material nonpublic information.

*Third*, the subpoenas seek information that is not already in the SEC's possession. Bruce Conway produced only an incomplete handful of documents responsive to one subpoena, and Elizabeth Conway and Merritt Conway produced no documents in response to their subpoenas. Hoke Decl. ¶¶ 11, 27-29. Mr. Conway has not testified under oath concerning, among other topics, his trading in CGIX securities, his reasons for doing so, his understanding of his obligation to refrain from trading on information about the potential merger, and the accounts in which he personally traded. *Id.* ¶ 26. This information is uniquely in Bruce Conway's (and not the SEC's) possession.

*Fourth*, the SEC staff has followed all required administrative steps. The Exchange Act authorizes the SEC to initiate investigations and designate officers to, *inter alia*, subpoena witnesses, take evidence, and require the production of records that the SEC deems relevant to its investigation. 15 U.S.C. § 78u(a)(1), (b). The Commission delegated this authority to the Director of the Division of Enforcement. 17 C.F.R. § 200.30-4(a)(13), (a)(1); *see also supra* at 2-3. The Associate Regional Director in charge of the SEC's enforcement program in Denver approved, and the Director of Enforcement ratified, the Formal Order initiating this investigation and authorizing designated staff members to subpoena witnesses, take evidence, and require the production of records deemed relevant to the investigation. The subpoenas were signed by an SEC staff attorney so-designated for purposes of this investigation and were properly served on the Conways. Hoke Decl. ¶¶ 10, 14, 16, 20, 21 & Exs. 4, 7, 8, 9, 10, 11. The SEC has met all administrative requirements related to the issuance and service of the subpoenas.

**III. Respondents Do Not Have a Valid Reason for Refusing to Comply with the Subpoenas.**

In refusing to comply with the Commission's subpoenas, Respondents' counsel requested written confirmation that the Formal Order authorizing the SEC's investigation was lawfully issued in accordance with constitutional and statutory requirements. Ex. 12. In response, the Commission confirmed that the Formal Order and subpoenas issued thereunder had been lawfully issued. Ex. 13. The SEC asked the Conways' counsel to respond by August 10, 2022, to confirm whether their clients would comply with the lawfully issued subpoenas. *Id.* Counsel did not respond, and the Commission has received no further communication (or compliance with the subpoenas) from the Conways or their counsel. Hoke Decl. ¶¶ 25-29.

9

The Conways' continued non-responsiveness belies their assertion that they "are prepared to respond to the subpoenas." Ex. 12. Nor, in any event, do the questions posed in counsel's letter justify Respondents' noncompliance with the Commission's administrative subpoenas.

### A. The Formal Order Was Lawfully Issued.

The Exchange Act authorizes the Commission to investigate potential securities laws violations and provides that "any member of the Commission or any officer designated by it" may "administer oaths and affirmations, subp[o]ena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry." 15 U.S.C. § 78u(b). The Commission has delegated authority to "order the making of" such investigations to the Director of the Division of Enforcement. 17 C.F.R. § 200.30-4(a)(13); *see also* 15 U.S.C. § 78d-1, 78d-2. The Director was appointed by the Commission in its capacity as head of a department, *see Free Enter. Fund v. PCAOB*, 561 U.S. 477, 510-13 (2010); U.S. Const. Art. II, § 2, cl. 2, and the Director serves at the pleasure of the Commission.

The Formal Order in this matter was approved for the Division of Enforcement by the Associate Regional Director in Denver and ratified by the Director of Enforcement.[2] The Formal Order authorized certain staff members to carry out the investigation, and one of those staff members issued the subpoenas underlying this action. This process complied with "constitutional and statutory requirements."

---

[2] Respondents' counsel has not, since receiving a copy of the Formal Order in April 2022, raised any issue with respect to the Formal Order's initial approval by the Associate Regional Director. If, in response to a show-cause order, Respondents were to raise some (as-yet-unidentified) issue(s) with the initial approval, any such issue(s) were cured by the Director's ratification.

### B.  The Staff Attorney Who Issued the Subpoenas Is Not a Constitutional Officer.

Counsel's suggestion that, by having been designated in the Formal Order as an "officer[] of the Commission" for purposes of this investigation, the staff attorney who signed the subpoenas was transformed into an "Officer[] of the United States" within the meaning of the Constitution, lacks merit.

The Appointments Clause of the Constitution governs the appointment of "'Officers of the United States,' a class of government officials distinct from mere employees." *Lucia v. SEC*, 138 S. Ct. 2044, 2049 (2018) (quoting U.S. Const. Art. II, § 2, Cl. 2). Principal officers—a category that includes "ambassadors, ministers, heads of departments, and judges," *Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 884 (1991)—must be appointed by the President, by and with the advice and consent of the Senate. U.S. Const. Art. II, § 2, Cls. 1, 2. "[I]nferior Officers"—those "whose work is directed and supervised at some level by" principal officers, *Edmond v. United States*, 520 U.S. 651, 663 (1997)—may either be appointed by the President, with the advice and consent of the Senate, or, if Congress has so provided, may be appointed by "the President alone," the "Courts of Law," or the "Head[s] of [a] Department." U.S. Const. Art. II, § 2, Cl. 2.

"Officers of the United States," both principal and inferior, are different from "mere employees" who make up the overwhelming majority of the federal workforce. As the Supreme Court has repeatedly observed, the vast majority of federal employees are not Officers of the United States whose appointments are governed by the Appointments Clause. *See Free Enter. Fund*, 561 U.S. at 506 n.9 (estimating that the percentage of federal employees and agents who are not officers "dramatically" exceeds 90%); *United States v. Germaine*, 99 U.S. 508, 509

11

(1879) ("nine-tenths of the persons rendering service to the government undoubtedly" are not constitutional officers). The Court reiterated this point in *Lucia*, noting that "non-officer employees" constitute "the broad swath of" the "Government's workforce" and thus their manner of hiring need not comply with the Appointments Clause—indeed, "the Appointments Clause cares not a whit about who named them." 138 S. Ct. at 2051.[3]

The staff attorney who signed the subpoenas is one of these "non-officer employees" whose method of hiring is not subject to the Appointments Clause. The staff attorney who issued the subpoenas lacks the "extensive powers . . . comparable to [those] of a federal district judge conducting a bench trial," *Lucia*, 138 S. Ct. at 2049 (internal quotation omitted), that informed the Supreme Court's conclusions that administrative law judges and special trial judges of the United States Tax Court are constitutional officers. *Lucia*, 138 S. Ct. at 2053-55 (administrative law judges); *Freytag*, 501 U.S. at 881-82 (special trial judges). The staff attorney cannot—by way of example only—"conduct trials," "rule on the admissibility of evidence," or "issue decisions containing factual findings, legal conclusions, and appropriate remedies." *Lucia*, 138 S. Ct. at 2053 (internal quotations omitted).

While the Formal Order empowers the staff attorney to administer oaths, issue subpoenas, and take testimony, he is authorized to do so only for purposes of the particular investigation approved by the Formal Order. Ex 1 at 3. And, as this case demonstrates, neither the staff attorney nor anyone else at the Commission can compel compliance with the SEC's

---

[3] *See also* Office of Management and Budget, Analytical Perspectives, Budget of the U.S. Government, Fiscal Year 2022, p. 44, Table 5-2 (2021) (estimating that there are more than 4.3 million federal employees, including more than 2.8 million executive branch civilian employees).

subpoenas—only a judge can do so. 15 U.S.C. § 78u(c); *see also* SEC Division of Enforcement, Enforcement Manual § 3.2.8 (SEC subpoenas are "not self-enforcing. Absent a court order, we cannot compel a witness or custodian to comply with any subpoena.").[4] This, too, is inconsistent with the status of a constitutional officer. *See Lucia*, 138 S. Ct. at 2053 (finding that administrative law judges, like Tax Court special trial judges, had "'the power to enforce compliance with discovery orders'") (quoting *Freytag*, 501 U.S. at 882)); *cf. Buckley v. Valeo*, 424 U.S. 1, 137-38 (1976) (per curiam) (concluding that powers that "are essentially of an investigative and informative nature" can be exercised by officials who are not "Officers of the United States").

Thus, counsel's suggestion that the term "officer" in the Exchange Act is synonymous with "Officers of the United States" in the Appointments Clause of the Constitution, Art. II, § 2, cl. 2, is mistaken. *Cf. United States v. Hendee*, 124 U.S. 309, 313 (1888) (clerk was "officer" under compensation statute, though he was "not, in the constitutional sense of the word, an officer of the United States"); *see also Lamar v. United States*, 240 U.S. 60, 65 (1916) ("words may be used in a statute in a different sense from that in which they are used in the Constitution"). Indeed, the Supreme Court has recognized that even the term "officer *of the United States*" must be understood in context: while it "usually" signals a constitutional officer, it too can encompass non-officer employees. *Steele v. United States*, 267 U.S. 505, 507 (1925). As discussed above, the context here makes clear that the "officers of the Commission" designated in the Formal Order are not "Officers of the United States" within the meaning of the Appointments Clause.

---

[4] *Available at* https://www.sec.gov/divisions/enforce/enforcementmanual.pdf.

## CONCLUSION

For the reasons set forth above, the SEC respectfully requests that the Court: (1) issue an Order to Show Cause why this Court should not order the Respondents to comply with the SEC's administrative subpoenas; and (2) following receipt of Respondents' justification, if any, and a reply thereto by the Commission, enter an Order compelling Respondents to comply with the subpoenas and directing such other relief as may be appropriate.

Respectfully submitted this 2nd day of December, 2022,

> *s/ Ian J. Kellogg*
> Ian J. Kellogg
> Securities and Exchange Commission
> 1961 Stout Street, Suite 1700
> Denver, CO 80294
> (303) 844-1046
> kelloggi@sec.gov
>
> *Counsel for the Securities and Exchange Commission*

14

## CERTIFICATE OF SERVICE

I hereby certify that on December 2, 2022, I will cause the foregoing application and its exhibits to be served by email and U.S. Mail on the following once this case is docketed in the Court's CM/ECF system:

Karen Cook
Karen Cook, PLLC
6060 N. Central Expressway, Suite 500
Dallas, TX 75206
karen@karencooklaw.com


S. Michael McColloch
S. Michael McColloch PLLC
6060 N. Central Expressway, Suite 500
Dallas, TX 75206
smm@mccolloch-law.com

<em>s/ Ian J. Kellogg</em><br>U.S. Securities and Exchange Commission

15