IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Miscellaneous Action No. 22-mc-00212-DDD-KAS

SECURITIES AND EXCHANGE COMMISSION,

      Petitioner,

v.

BRUCE CONWAY,
ELIZABETH CONWAY, and
MERRITT CONWAY,

      Respondents.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KATHRYN A. STARNELLA**

This matter is before the Court on Petitioner's **Application for Order to Show Cause and for Order Compelling Compliance with Administrative Subpoena** [#1] (the "Application"). The Application [#1] has been referred to the undersigned for a Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Fed. R. Civ. P. 72(b)(1), and D.C.COLO.LCivR 72.1(c)(3).[1] *See* [#6]; *Reassigning Magistrate Judge* [#11]. On initial review of the Application [#1], the Magistrate Judge previously assigned to this matter

---

[1] Magistrate Judges issue recommendations on referred requests to enforce administrative subpoenas. *See, e.g.*, *U.S. S.E.C. v. TKO Farms, Inc.*, No. 2:21-cv-000216-HCN-CMR, 2021 WL 6284396, at *1 (D. Utah May 6, 2021) (Magistrate Judge recommending that a petition to enforce the SEC's administrative subpoena be granted); *U.S. S.E.C. v. Chin*, No. 12-cv-01336-PAB-BNB, 2012 WL 13228616, at *12 (D. Colo. Nov. 29, 2012) (Magistrate Judge recommending resolution of an order to show cause issued in connection with an SEC administrative subpoena); *see also E.E.O.C. v. Kans. City, Kans. Cmty. Coll.*, No. 23-mc-00202-DDC-ADM, 2023 WL 5955793, at *1 (D. Kan. July 21, 2023) (Magistrate Judge recommending that the District Judge grant the EEOC's application for enforcement of administrative subpoenas and order compliance with them); *Scalia v. Pure Pollination, LLC*, No. 20-mc-00227-DDD-STV, 2021 WL 7407012, at *1 (D. Colo. Feb. 1, 2021) (Magistrate Judge recommending that administrative subpoena issued by the Secretary of Labor in connection with the Occupational Safety and Health Act of 1970 be granted).

issued an Order to Show Cause [#7] directing Respondents to show cause in writing why the Court should not require compliance with Petitioner's administrative subpoenas. Respondents filed a Response [#8] to the Order to Show Cause [#7], in opposition to the Application [#1], and Petitioner filed a Reply [#9]. The Court has reviewed the briefs, the entire case file, and the applicable law. For the reasons stated below, the Court **RECOMMENDS** that the Order to Show Cause [#7] be **MADE ABSOLUTE** and that the Application [#1] be **GRANTED**.

## I. Background

Petitioner is investigating whether Respondent Bruce Conway illegally traded securities based on material nonpublic information. *Application* [#1] at 1. Before the stock markets opened on August 24, 2020, Cancer Genetics announced a merger with StemoniX, Inc., a privately held company. *Id.* at 3. Shortly before the merger's announcement, Respondent Bruce Conway "began purchasing CGIX stock, and the [Securities and Exchange Commission ("SEC")] has reason to believe that, at the time of his purchases, [Respondent Bruce] Conway may have been in possession of material nonpublic information concerning Cancer Genetics' merger with StemoniX." *Id.*

On June 15, 2021, Petitioner issued a Formal Order, authorizing employees of the SEC to investigate Respondent Bruce Conway, pursuant to Sections 21(a) and (b) of the Securities Exchange Act of 1934 ("Exchange Act"). *Formal Order* [#1-3]; *see also Decl. of Michael Hoke ("Hoke Decl.")* [#1-2] ¶ 4. The Formal Order was approved by "the Associate Regional Director in charge of the SEC's enforcement program in Denver and was ratified by the Director of Enforcement." *Hoke Decl.* [#1-2] ¶ 4; *see also Formal Order* [#1-3] at 3. Additionally, the Formal Order designates specific SEC staff as officers

authorized to, among other things, subpoena witnesses, take evidence for purposes of the investigation, and require production of documents and other materials. *Formal Order* [#1-3] at 3. As part of the formal investigation, Senior Counsel at the SEC issued subpoenas to Respondent Bruce Conway and his wife and daughter, Respondents Elizabeth and Merritt Conway. *Hoke Decl.* [#1-2] ¶¶ 1, 14, 21.

On March 16, 2022, and July 8, 2022, the SEC served subpoenas "seeking documents from [Respondent Bruce] Conway related to, among other things, his knowledge of and communications concerning Cancer Genetics and StemoniX, any agreement not to trade on his knowledge about the companies' potential merger, his trading in CGIX securities in his own account, and trusts and accounts held for the benefit of others in which the SEC staff believe [Respondent Bruce] Conway may have traded or directed trading in CGIX securities." *Application* [#1] at 4; *see also Hoke Decl.* [#1-2] ¶¶ 14, 21; *Subpoenas* [#1-6, #1-11]. Also on July 8, 2022, SEC staff served subpoenas seeking documents from Respondents Elizabeth Conway and Merritt Conway concerning trading in CGIX securities in their accounts, among other things. *Subpoenas* [#1-12, #1-13].

Respondent Bruce Conway produced some documents in response to the subpoenas. *Reply* [#9] at 24-25; *Hoke Supp. Decl.* [#9-1] ¶ 7 (declaring that, "[f]rom April 2 to April 7, 2022," Mr. Conway sent twenty-two emails "providing information or producing documents in response to the Commission's subpoena"; the "emails generally attached a single screen shot or document . . . related to StemoniX or trading by Mr. Conway in CGIX"). Mr. Conway also produced a list of accounts with Fidelity, Charles Schwab, and UBS over which he had had direct or indirect control. *Hoke Supp. Decl.* [#9-

1] ¶ 8. The listed accounts included eight of the twelve brokerage accounts identified in one of the SEC's document subpoenas. *Id*. Respondent Conway expressed an intent to produce more documents as he located them, and he followed through. *Id*. (declaring that Mr. Conway stated, "I sent some emails that don't total up. I'm sorry, it's a very cumbersome manual process. I'll keep at it . . . . Work in Progress.'"); *id.* ¶ 9 (describing additional information produced about the subject brokerage accounts); *id.* ¶ 11 (describing trade confirmations received from Respondent Conway, which reflected "purchases and sales of CGIX stock" and which identified "ten of the twelve account numbers listed" in the July 8, 2022 subpoena).

Additionally, after the first subpoena was issued, Respondent Bruce Conway "admitted to having traded in CGIX securities across various accounts while in possession of information that CGIX would be acquired by StemoniX." *Reply* [#9] at 23. Specifically, during a March 18, 2022 phone call with a senior SEC staff attorney—and despite being advised that no direct consequence will arise from declining to answer questions and that the SEC routinely shares information with law enforcement agencies—Bruce Conway "confirmed . . . that he knew that Cancer Genetics was StemoniX's merger target at the time he purchased CGIZ stock." *Hoke Supp. Decl.* [#9-1] ¶ 3. Further, during an April 4, 2022 phone call with the same senior SEC staff attorney—and after being reminded that he need not produce information and that SEC routinely shares information with law enforcement agencies—Bruce Conway offered to check his family members' stock trading accounts for any CGIX stock transaction facilitated by them. *Id*. ¶ 4. On another phone call two days later, Bruce Conway advised the same senior SEC staff attorney that he emailed that attorney "certain single-day trade confirmations for CGIX for his personal

trading account at Fidelity" and confirmed that "he had directed the CGIX trading in his IRA account and [in his family members' trust accounts] for which he acted as trustee or otherwise had trading authority." *Id*. ¶ 5; *see also id*. ¶ 6.

Further, Respondent Bruce Conway was served with a subpoena for testimony on June 27, 2022. *Application* [#1] at 4; *see* [#1-9].[2] The subpoena "required [Respondent Bruce] Conway to appear for testimony at the [SEC's] Denver Regional Office on July 22, 2022." *Application* [#1] at 4. "Two days before [Respondent Bruce] Conway's scheduled testimony, and three months after receiving a copy of the Formal Order, the Conways' counsel sent a letter refusing to comply with the subpoenas." *Id.* at 5. Respondents' counsel noted concerns with the constitutionality of the issuance and enforcement of the Formal Order. *Id.* Petitioner responded to such concerns, assuring counsel that the Formal Order was constitutional and requesting "confirmation from the Conways' counsel by August 10, 2022, that their clients would comply with the subpoenas." *Id.* Petitioner did not receive a response and subsequently filed this action. *Id.* Petitioner requests that the Court order enforcement of the five administrative subpoenas served to Respondents Bruce, Elizabeth, and Merritt Conway. *See* [#1-6, #1-9, #1-11, #1-12, #1-13]. All Respondents have asserted their Fifth Amendment rights against self-incrimination and have not produced any additional requested documentation. *Response* [#8] at 4.

## II. Legal Standard

"Federal securities law authorizes the SEC to seek an order from [a district court] requiring compliance with a subpoena in a summary proceeding." *SEC v. Harman Wright*

---

[2] Docket No. 1-9, the most recent subpoena for testimony, was issued on June 27, 2022, to Respondent Bruce Conway. The prior subpoenas for testimony, *see* [#1-7, #1-8], are older and not at issue in the Application [#1].

*Grp., LLC*, No. 18-mc-00190-CMA, 2018 WL 6102758, at *2 (D. Colo. Nov. 21, 2018) (citing 15 U.S.C. § 78u(e); Fed. R. Civ. P. 81(a)(5)). "Courts enforce administrative agency investigative subpoenas if (1) the agency's 'investigation will be conducted pursuant to a legitimate purpose,' (2) the subpoena seeks information that 'may be relevant to the purpose,' (3) 'the information sought is not already within the [agency's] possession,' and (4) all 'administrative steps required . . . have been followed.'" *Id.* (quoting *United States v. Powell*, 379 U.S. 48, 57-58 (1964)). "The agency's burden in meeting this test is a 'slight one,' and '[t]he requisite showing is generally made by affidavit of the agent who issued the summons and who is seeking enforcement.'" *SEC v. Kimmel*, No. 19-mc-00113-CMA, 2020 WL 2800813, at *2 (D. Colo. May 29, 2020) (quoting *United States v. Balanced Fin. Mgmt., Inc.*, 769 F.2d 1440, 1443 (10th Cir. 1985)). "Once this prima facie showing has been met, the respondent has the burden to establish the subpoena is unreasonable." *U.S. SEC v. TKO Farms, Inc.*, No. 2:21-cv-00216-HCN-CMR, 2021 WL 6284396, at *2 (D. Utah May 6, 2021) (citing *Solis v. CSG Workforce Partners LLC*, No. 2:11-CV-903-TC, 2012 WL 1379310, at *2 (D. Utah Apr. 20, 2012)).

## III. Analysis

### A.    Enforcement of the Administrative Subpoenas

Petitioner argues that "(1) the investigation will be conducted pursuant to a legitimate purpose; (2) the subpoenas seek information that may be relevant to that purpose; (3) the information sought is not already in the SEC's possession; and (4) all required administrative steps have been followed." *Application* [#1] at 6. Respondents do not contest that Petitioner has met its burden regarding the requisite showing establishing the Court's ability to enforce the administrative subpoenas.

The Court agrees that Petitioner has met its burden. As Petitioner notes, the SEC's purpose for the investigation is to find "possible violations of the federal securities laws, *to wit*, possible trading in the securities of Cancer Genetics on the basis of material nonpublic information." *Id.* at 8 (emphasis in original). This is a legitimate purpose as the SEC has authority to investigate potential violations of the federal securities laws. *See SEC v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 741 (1984) ("Congress has vested the [SEC] with broad authority to conduct investigations into possible violations of the federal securities laws and to demand production of evidence relevant to such investigations."). Additionally, the subpoenas seek information regarding the trades in Respondents' accounts as they pertain to StemoniX, which is relevant to the purported interest. *See Subpoenas* [#1-6, #1-9, #1-11, #1-12, #1-13]. This evidence is directly related to the investigation.

Petitioner further explains that "the subpoenas seek information that is not already in the SEC's possession." *Reply* [#9] at 31; *Application* [#1] at 8. Finally, the appropriate administrative steps appear to have been followed, given that Petitioner issued a Formal Order [#1-3] at the start of the investigation, issued multiple subpoenas to Respondent Bruce Conway for documents and testimony, issued subpoenas to Respondents Elizabeth and Merritt Conway for documents, and communicated with counsel regarding Respondents' concerns before filing this action. *Application* [#1] at 2-4. Thus, the Court finds that Petitioner has met its burden to establish the Court's authority to compel compliance with the administrative subpoenas. *See Harman Wright Grp., LLC*, 2018 WL 6102758, at *2-3 (holding that the SEC had met all four requirements regarding its investigation of the respondent).

**B.    Constitutionality**

Before turning to Respondents' Fifth Amendment arguments, the Court addresses two overarching arguments made by Respondents concerning the constitutionality of the subpoenas issued by the SEC. In short, Respondents argue that the Application [#1] should be denied because the "underlying investigation and the resulting subpoenas are constitutionally invalid." *Response* [#8] at 8. First, Respondents assert that the Formal Order [#1-3], and the investigation following it, are constitutionally invalid because "the SEC staff appointed by such formal orders are not mere statutory officers; they are constitutionally inferior officers by virtue of the nature of their powers *and* as a matter of statutory construction." *Id.* at 10 (emphasis in original). Thus, Respondents conclude that, because the officers running the investigation and issuing the subpoenas were not appointed by the SEC itself, their actions are unconstitutional. *Id.* at 13. Second, Respondents argue that "the Formal Order's designation of SEC Staff who are separated from the President by more than one layer of good cause protection from removal" violates the Take Care Clause. *Id.* (internal quotation marks omitted).

The Magistrate Judge previously assigned to this case stated that Respondents' constitutional arguments "are not well taken and the Court agrees with the SEC on this matter." *Order* [#7]. The undersigned agrees with that initial assessment and is not convinced by Respondents' further argument in the Response [#8] that the delegation of powers at issue here is unconstitutional, for the reasons that follow.

**1.    The Appointments Clause**

Respondents specifically argue that "[g]iven the functions of and powers ostensibly granted to the SEC's Division of Enforcement Staff in lieu of the Commission in the Formal

Order to conduct this investigation—such as issuing subpoenas, requiring production of records, and taking testimony under oath—the SEC Staff function as 'officers' within the meaning of Article II's Appointments Clause." *Response* [#8] at 9. Respondents assert that the Exchange Act "require[s] all investigations to be conducted either by the Commission, one of the Commissioners, or by an inferior officer designated *by the Commission* for that purpose." *Id.* at 10 (emphasis in original). Respondents aver that, even if the Formal Order [#1-3] were ratified by the Director of Enforcement, such ratification "cannot render lawful action of non-officers wielding the officer powers set forth in the Formal Order." *Id.* at 13. Thus, Respondents conclude that the actions taken in furtherance of the investigation by such non-officers "therefore appear to be void under the Appointments Clause[.]" *Id.*

"The Appointments Clause of the Constitution lays out the permissible methods of appointing 'Officers of the United States,' a class of government officials distinct from mere employees." *Lucia v. SEC*, 585 U.S. 237, 241 (2018) (quoting U.S. CONST. art. II, § 2, cl. 2). Specifically, this clause provides:

> [The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Department.

U.S. CONST. art. II, § 2, cl. 2. In other words, "principal" officers may appoint "inferior" officers, and persons not so classified as officers are deemed employees, to whom the requirements of the Appointments Clause do not apply. *Springer v. America*, No. 23-CV-373-GKF-MTS, 2024 WL 2024135, at *5 (N.D. Okla. Apr. 19, 2024) (citing *Freytag v.*

*Comm'r*, 501 U.S. 868, 880-81 (1991); *Tucker v. Comm'r*, 676 F.3d 1129, 1132 (D.C. Cir. 2012)). The Supreme Court's "basic framework for distinguishing between officers and employees" centers on (1) whether the individual occupies a "continuing position established by law," and (2) whether the individual "exercise[s] significant authority pursuant to the laws of the United States." *Lucia*, 585 U.S. at 245 (quoting *Buckley v. Valeo*, 424 U.S. 1, 126 (1976), *superseded by statute on other grounds as recognized in McConnell v. Fed. Election Comm'n*, 540 U.S. 93 (2003)) (internal quotation marks omitted).

The subpoenas were issued by Senior Counsel at the SEC. *See Hoke Decl.* [#1-1] ¶¶ 1, 14, 21. The Court first determines whether this individual occupies a "continuing position established by law." *Lucia*, 585 U.S. at 245. Congress has delegated the broad authority to the SEC to, "in its discretion, make such investigations as it deems necessary to determine whether any person has violated, is violating, or is about to violate any provision of this chapter[.]" 15 U.S.C. § 78u(a)(1). With respect to requests for and the production of records, "the Commission or any officer designated by it is empowered to administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of any books, papers, correspondence, memoranda, or other records which the Commission deems relevant or material to the inquiry." 15 U.S.C. § 78u(b). Thus, the Court finds that senior counsel employees working for the SEC maintain continuing positions which are established by law. *See* 15 U.S.C. § 78d(a); 5 U.S.C. § 4802(b); *S.E.C. v. Musk*, No. 3:23-mc-80253-JSC, 2024 WL 2875096, at *4 (N.D. Cal. May 14, 2024) (holding that Senior Counsel for the SEC "holds a continuing office established by law").

Second, the Court determines whether Senior Counsel at the SEC "exercise[s] significant authority pursuant to the laws of the United States." *Lucia*, 585 U.S. at 245. Here, the Court does not find that the Senior Counsel exercises significant authority with regards to investigations set forth by formal orders. Respondents compare the staff attorney's authority to conduct investigations to the authority of an administrative law judge ("ALJ"). *Response* [#8] at 9. However, as Petitioner notes, the staff attorney, unlike an ALJ, cannot "conduct trials, rule on the admissibility of evidence, or issue decisions containing factual findings, legal conclusions and appropriate remedies." *Reply* [#9] at 7 (quoting *Lucia*, 585 U.S. at 248) (internal quotation marks omitted). The Supreme Court found in *Lucia v. SEC* that SEC ALJs wield significant authority because they "exercise authority 'comparable to' that of a federal district judge conducting a bench trial." *Lucia*, 585 U.S. at 242. The Court does not find that SEC staff attorneys wield similar significant authority because they have no "adjudicatory role; [they] merely conduct[ ] investigations at the request of the Director of Enforcement to help carry out the Director's own objectives." *Musk*, 2024 WL 2875096, at *5. Accordingly, the Court finds that Senior Counsel at the SEC are employees, not principal or inferior officers, and therefore the requirements of the Appointments Clause do not apply to them. *See Springer*, 2024 WL 2024135, at *5.

Additionally, Respondents' argument that the language of 15 U.S.C. § 78u(b) requires that investigations be run by Officers of the United States fails. Respondents argue that "[w]hen Congress uses the word 'officer' to describe a government official . . . courts presume that Congress intends the word in the constitutional sense[.]" *Response* [#8] at 10 (citing *United States v. Germaine*, 99 U.S. 508, 510 (1878)). This argument

misconstrues the holding of *United States v. Germaine*. In *Germaine*, the Supreme Court rejected any suggestion that "Congress, when enacting a criminal law for the punishment of officers of the United States, intended to punish any one not appointed in one of those modes [*i.e.* appointment as a principal officer through President nomination and Senate confirmation or appointment as an inferior officer by the President, the courts of law, or the heads of departments]." *Germaine*, 99 U.S. at 510. The Supreme Court did not conclude that, when Congress uses the word "officer," it is automatically interpreted to mean "Officer of the United States." Rather, the Supreme Court narrowly determined the intent of Congress with respect to the specific statute at issue. *Id.* Thus, the Court here is not required to interpret Congress's use of the word "officer" to mean "Officer of the United States" without further evidence of an intent for such meaning to be applied.

Additionally, the Court rejects Respondents' argument that 15 U.S.C. § 77s(c) and 15 U.S.C. § 78u(b) require the SEC to appoint the on-the-ground investigators and preclude the Director of the Division of Enforcement from doing so. *See Response* [#8] at 10. Through 15 U.S.C. § 77s(c) and 15 U.S.C. § 78u, Congress empowered the SEC "or any officer or officers designated by it" to investigate violations of the Exchange Act. Congress also granted the SEC "authority to delegate, by published order or rule, any of its functions to a division of the Commission . . . or an employee . . . including" investigative functions. 15 U.S.C. § 78d-1(a). And Congress authorized the SEC "to make, amend, and rescind such rules and regulations as may be necessary to carry out the provisions of [the Exchange Act.]" 15 U.S.C. § 77s(a). Through that rule-making authority, the SEC validly delegated authority to the Director of the Division of Enforcement who then validly

designated others to perform under his direction investigatory tasks. 17 CFR 200.30-4(a)(1), (a)(13); *Forma Order* [#1-3].

Accordingly, the Court does not find that the Formal Order [#1-3] or the issued subpoenas are unconstitutional based on purported violation of the Appointments Clause.

### 2.    The Take Care Clause

Respondents argue that an "apparent Take Care Clause violation result[s] from the Formal Order's designation of SEC Staff who are 'separated from the President by more than one layer of 'good cause' protection from removal." *Response* [#8] at 13-14. Petitioner asserts that "[t]his argument . . . is predicated on the SEC staff being constitutional Officers within the meaning of the Appointments Clause." *Reply* [#9] at 10-11.

The Take Care Clause states that "[the president] shall take Care that the Laws be faithfully executed[.]" U.S. CONST. art. II, § 3. "[C]ongressional action must leave the Executive branch with sufficient 'control' over its litigation so as to 'ensure that the President is able to perform his constitutionally assigned duties.'" *United States ex rel. Stone v. Rockwell Int'l Corp.*, 265 F.3d 1157, 1175 (10th Cir. 2001), *modified and superseded on other grounds by United States ex rel. Stone v. Rockwell Int'l Corp.*, 282 F.3d 787 (10th Cir. 2002), (quoting *Morrison v. Olson*, 487 U.S. 654, 696 (1988)).

Thus, because the President "is charged specifically to take care that [the laws] be faithfully executed, . . .  as part of his executive power[,] he should select those who [are] to act for him under his direction in the execution of the laws." *Myers v. United States*, 272 U.S. 52, 117 (1926). Additionally, "in the absence of any express limitation respecting removals," the President's power to remove "those for whom he cannot continue to be

responsible" is essential. *Id.* Simply put, the President "cannot 'take Care that the Laws be faithfully executed' if he cannot oversee the faithfulness of the officers who execute them." *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 484 (2010).

Respondents state that, "[t]o maintain proper oversight by the President, ensure political accountability, and avoid diffusion of executive power, no inferior officers may be separated by more than one layer of 'good-cause' protection from removal by the President." *Response* [#8] at 13-14. In support, Respondents point to *Free Enterprise Fund v. Public Company Accounting Oversight Board* and *Jarkesy v. SEC. Id.* at 14. However, in both cases, the courts found that the at-issue individuals were inferior officers who exercised significant authority. *Free Enter. Fund*, 561 U.S. at 486; *Jarkesy v. SEC*, 34 F.4th 446, 464 (5th Cir. 2022). Here, the Court has already found that the SEC Senior Counsel is an employee, not an inferior officer or an Officer of the United States, because the SEC Senior Counsel does not wield significant authority. *See supra* § III.B.1. Respondents do not provide any additional basis as to why an SEC employee's authority to conduct investigations would be so significant as to violate the Take Care Clause.

Relatedly, Respondents claim, without citation, that protections from employment termination guaranteed by federal statutes, such as the Federal Service Labor-Management Relations Statute and the Civil Service Reform Act of 1978, or the current collective bargaining agreement for SEC union members each constitute a level of "good-cause" protection from removal for purposes of the Take Care Clause. *Response* [#8] at 14. Even if Respondents are correct on this point, the Court is unaware of, and Respondents fail to point to, any case law supporting the conclusion that non-officer employees must not be separated by more than one level of "good-cause" protection from

removal by the President. *See Response* [#8] at 13-15. For these reasons, the Court rejects Respondents' Take Care Clause argument.

Accordingly, the Court does not find that the Formal Order [#1-3] or the issued subpoenas are unconstitutional based on purported violation of the Take Care Clause.

**C.    Fifth Amendment**

**1.    The Subpoena for Testimony**

Respondent Bruce Conway argues that his "consent to submit to formal testimony . . . —despite the lack of any resolution to the legal and constitutional questions—render[s] the Application [#1] subject to dismissal for mootness." *Response* [#8] at 3.

"Article III mootness is 'the doctrine of standing set in a time frame: The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).'" *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997) (quoting *Arizonans for Official English v. Arizona*, 520 U.S. 43, 68 n.22 (1997)). "A federal court has no power to give opinions upon moot questions or declare principles of law which cannot affect the matter in issue in the case before it. *S. Utah Wilderness All.*, 110 F.3d at 727 (citing *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992)). "Thus, to be cognizable, a suit must be 'a real and specific controversy admitting of specific relief through a decree of a conclusive character.'" *S. Utah Wilderness All.*, 110 F.3d at 727 (citing *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975)).

Respondent Bruce Conway states that he "has agreed—since at least December 12, 2022, to submit to sworn testimony[.]" *Response* [#8] at 4. He argues that, because he has agreed to testify, the issue concerning the subpoena for testimony is moot. *Id.*;

*see June 27, 2022 Subpoena* [#1-9].[3] Petitioner asserts that, "[a]bsent an Order from this Court compelling [Respondent Bruce] Conway to comply with the subpoena, he remains free to ignore, or interject some other reason for refusing to abide by, his latest 'agreement' to sit for testimony as required by the [SEC's] administrative subpoena." *Reply* [#9] at 1-2.

Respondent Bruce Conway failed to appear for testimony on July 22, 2022, as required by the subpoena. *Id.* at 1; *June 27, 2022 Subpoena* [#1-9] at 3. Respondent Bruce Conway has yet to comply with the subpoena. *Reply* [#9] at 36-37. Although he has since represented that he is willing to appear, *see Response* [#8] at 4, the Court finds that his agreement should be enforced by order of the Court.

"An exception to mootness for conduct that is capable of repetition yet evading review applies when (1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *InfoCision Mgmt. Corp. v. Griswold*, No. 22-1264, 2024 WL 3738578, at *6 (10th Cir. Aug. 9, 2024) (citation and internal quotation marks omitted). The Court finds that both elements are met. First, the subpoenas seeking testimony issued to Respondent Bruce Conway set testimony dates only 12-25 days from the subpoenas' dates of issuance. *See* [#1-7, #1-8, #1-9]. Any future agreement to sit for testimony would also likely provide for a similarly short timeframe. Second, Respondent Bruce Conway only agreed to testify after this litigation was filed. *Response* [#8] at 4. Given that he previously failed to appear for his testimony on July 22,

---

[3] The June 27, 2022 subpoena, located at Docket No. 1-9, is the most recent subpoena for testimony. The other two subpoenas for testimony provided by Petitioner, *see* [#1-7, #1-8], are older and not at issue in the Application [#1].

2022, the Court finds a reasonable expectation that Petitioner could be subject to the same action again in the absence of a Court order.

Respondent Bruce Conway does not argue that the subpoena for testimony should not be enforced because of any Fifth Amendment issues, although he reserves his right to assert the Fifth Amendment during any such testimony. *Response* [#8] at 2-4. This is the ordinary way for a respondent to assert this right. *See, e.g.*, *SEC v. Pence*, 323 F.R.D. 179, 187 (S.D.N.Y. 2017) ("Ordinarily, the procedure by which a deponent seeks to assert his privilege against self-incrimination is for the deponent to attend the deposition, to be sworn under oath, and to answer those questions he can without risking self-incrimination.") (internal quotation marks omitted); *see also Kimmel*, 2020 WL 2800813, at *3 (holding in an SEC subpoena enforcement case that the respondent "may decide to invoke the Fifth Amendment on a question by question basis, but he may not refuse to appear for testimony altogether") (citing *SEC v. Caramadre*, 717 F. Supp. 2d 217, 222 (D.R.I. 2010) (noting that while the Fifth Amendment protects against self-incrimination, "it does not protect someone from having to invoke the right to avoid self-incrimination in the first place"). Thereafter, Petitioner may "move to compel the witness to answer the questions for which the privilege was asserted." *Pence*, 323 F.R.D. at 187. Although there are exceptional circumstances where such arguments may be resolved in advance of the deposition, such conditions are not present here. *See, e.g.*, *id.* (holding that Fifth Amendment privilege issues could be resolved prior to a deposition where the deponent was in prison, proceeding pro se, was not easily deposed, and had made the request for the determination in advance).

Accordingly, the Court **recommends** that the Application [#1] be **granted** and that the most recent testimony subpoena issued to Respondent Bruce Conway be **enforced**. *See* [#1-9].

### 2.    The Subpoenas for Documents

Respondents assert that they have "fully complied" with the document subpoenas by invoking their Fifth Amendment rights. *Response* [#8] at 4; *see Decl. of Bruce Conway* [#8-1]; *Decl. of Elizabeth Conway* [#8-2]; *Decl. of Merritt Conway* [#8-3].

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." The Fifth Amendment "applies only when the accused is compelled to make a Testimonial Communication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408 (1976). "'The privilege extends to questions propounded in a civil action, whether the claimant is a party or a witness,' and the privilege may be asserted whenever 'the witness has reasonable cause to apprehend danger from a direct answer.'" *Omni Air Int'l, LLC v. Austin Technik 1, Inc.*, No. 17-CV-163-TCK-JFJ, 2018 WL 1740936, at *2 (N.D. Okla. Apr. 11, 2018) (quoting *United States v. Jones*, 703 F.2d 473, 475-76 (10th Cir. 1983)). "[C]laim[s] of privilege cannot be sustained if the fear of self-incrimination rests on 'remote and speculative possibilities[.]'" *Omni Air Int'l, LLC*, 2018 WL 1740936, at *2 (quoting *Jones*, 703 F.2d at 475-76).

"[A] person may be required to produce specific documents even though they contain incriminating assertions of fact or belief because the creation of those documents was not 'compelled' within the meaning of the privilege." *United States v. Hubbell*, 530 U.S. 27, 35 (2000) (citing *Fisher*, 425 U.S. at 391). An individual cannot "avoid compliance with the subpoena merely by asserting that the item of evidence which he is required to

produce contains incriminating writing, whether his own or that of someone else." *Hubbell*, 530 U.S. at 36. "'[T]he act of production' itself may implicitly communicate 'statements of fact.'" *Id.* In other words, the act-of-production doctrine may be invoked under the Fifth Amendment when "the act of producing the subpoenaed documents would involve testimonial self-incrimination." *United States v. Schmidt*, 816 F.2d 1477, 1480-81 (10th Cir. 1987).

### a.      Respondents Elizabeth and Merritt Conway

Respondents Elizabeth and Merritt Conway argue that they "have fully complied with the document subpoenas," *see* [#1-12, #1-13], and, thus, the Application [#1] should be dismissed as moot. *Response* [#8] at 4; *see Decl. of Elizabeth Conway* [#8-2]; *Decl. of Merritt Conway* [#8-3]. Both Respondents have asserted their Fifth Amendment rights in response to Petitioner's subpoenas. *Response* [#8] at 4; *see Decl. of Elizabeth Conway* [#8-2] at 4-9; *Decl. of Merritt Conway* [#8-3] at 4-9. Petitioner argues that "no matter how low the bar to establish a substantial and real threat of self-incrimination, [Respondents] Elizabeth and Merritt Conways' conclusory assertions that 'any admission that [they] possess such records would tend to incriminate [them]' . . . are insufficient to clear it." *Reply* [#9] at 22.

The Court agrees that the blanket assertions of Fifth Amendment privilege made here are not sufficient. Respondents are not exonerated from producing the requested documents "merely because [they] declare [ ] that in doing so [they] would incriminate [themselves]—[their] say-so does not itself establish the hazard of incrimination." *Schmidt*, 816 F.2d at 1481 (quoting *Hoffman v. United States*, 341 U.S. 479, 486 (1951)) (internal quotation marks omitted). The Court finds no support for the conclusion that criminal prosecution is likely given that Petitioner is investigating "whether [Respondent]

*Bruce Conway* illegally traded securities based on material nonpublic information[,]" not whether Respondents Elizabeth or Merritt Conway were responsible for such trades. *Reply* [#9] at 21 (emphasis in original). Petitioner notes that it issued subpoenas to Respondents Elizabeth and Merritt Conway because some of Respondent Bruce Conway's trades "were made in the accounts of his wife and daughter." *Id.* at 21.

Therefore, the Court does not find that either Respondent Elizabeth Conway or Respondent Merritt Conway have sufficiently asserted their Fifth Amendment rights because there is no indication suggesting that they are under threat of prosecution. *See United States v. Rinehart*, 539 F. Supp. 2d 1334, 1337 (W.D. Okla. 2008) ("The fear of self-incrimination must be based on more than 'remote and speculative possibilities' and protects only against 'real dangers.'") (quoting *Zicarelli v. N.J. State Comm'n of Investigation*, 406 U.S. 472, 478 (1972)); *see also United States v. Edgerton*, 734 F.2d 913, 919 (2d Cir. 1984) ("If the court determines that the incriminatory nature is not readily apparent, the witness then must endeavor to explain how his answer will be incriminatory."). Thus, the Court does not find that the Application [#1] is moot with respect to Respondents Elizabeth and Merritt Conway based on their unadorned assertions of Fifth Amendment privilege, and they must comply with the underlying document subpoenas directed at them.

Accordingly, the Court **recommends** that the Application [#1] be **granted** and that the document subpoenas issued to Respondents Elizabeth Conway and Merritt Conway be **enforced**. *See* [#1-12, #1-13].

### b.    Respondent Bruce Conway

Two document subpoenas were issued to Respondent Bruce Conway, one on March 16, 2022, *see* [#1-6], and one on July 8, 2022, *see* [#1-11]. He opposes compliance

with the subpoenas under the act-of-production doctrine, asserting that producing the requested documents would violate his Fifth Amendment privilege. *Response* [#8] at 4-8; *see Decl. of Bruce Conway* [#8-1] at 3-4. Petitioner asserts that Respondent Bruce Conway forfeited his Fifth Amendment privilege by (1) "admitting to the trading under investigation," (2) "making a partial production in response to the SEC's first subpoena," and (3) "not timely raising the act-of-production doctrine as a basis for refusing to comply with the subpoenas." *Reply* [#9] at 23.

Finding it dispositive, the Court first addresses Petitioner's timing argument. *See Minnesota v. Murphy*, 465 U.S. 420, 428 (1984) ("[A] witness under compulsion to make disclosures must assert the privilege in a timely manner[.]"). Petitioner asserts that "at no point until after this subpoena enforcement action was filed did [Respondent Bruce] Conway or his counsel claim that [he] had, or would invoke, a Fifth Amendment right not to produce documents," and therefore that he has waived, or forfeited, the privilege.[4] *Reply* [#9] at 23-24.

"Waiver of constitutional rights," including one's Fifth Amendment privilege against self-incrimination, "is not lightly to be inferred." *Smith v. United States*, 337 U.S. 137, 150 (1949). However, "an individual may lose the benefit of the [Fifth Amendment] privilege without making a knowing and intelligent waiver." *Garner v. United States*, 424 U.S. 648, 654 n.9 (1976). If an individual seeks the protection of Fifth Amendment privilege, he must claim it; unless invoked, the privilege is waived. *Rogers v. United States*, 340 U.S. 367,

---

[4] The Sixth Circuit has noted that, under circumstances such as these, "forfeiture" of the Fifth Amendment privilege, which concerns the failure to timely assert the right, is a more appropriate term than "waiver," which concerns a voluntary, intentional relinquishment of the right. *In re Flint Water Cases*, 53 F.4th 176, 193 n.16 (6th Cir. 2022). However, as did the Sixth Circuit, the Court uses the term "waiver" here (as well as the term "forfeiture") given the entrenchment of its use in this context. *See id.*

370-71 (1951) (rejecting a claim of Fifth Amendment privilege in a testimonial context where it was invoked as "pure afterthought") (citing *United States v. Monia*, 317 U.S. 424, 427 (1943)).

The SEC issued the first document subpoena to Respondent Bruce Conway on March 16, 2022. *See* [#1-6]. The production deadline for this subpoena was April 1, 2022. *Id.* at 1. Throughout early April, Bruce Conway provided a partial document production in response to the subpoena. *Hoke Decl.* [#1-2] ¶ 11. He obtained counsel on or about April 11, 2022. *Id.* ¶ 12. The SEC issued the second document subpoena to him on July 8, 2022. *See* [#1-11]. The production deadline for this subpoena was July 22, 2022. *Id.* at 1. That deadline was later extended to August 10, 2022. *Hoke Decl.* [#1-2] ¶ 24.

Importantly, both document subpoenas included warnings to Respondent Bruce Conway regarding his Fifth Amendment rights:

> *Fifth Amendment and Voluntary Testimony.* Information you give may be used against you in any federal, state, local or foreign administrative, civil or criminal proceeding brought by the Commission or any other agency.
>
> You may refuse, in accordance with the rights guaranteed to you by the Fifth Amendment to the Constitution of the United States, to give any information that may tend to incriminate you.

*See* [#1-6] at 23; [#1-11] at 21. On June 24, 2022, and July 15, 2022, counsel for Respondent Bruce Conway and for Petitioner spoke. *Hoke Supp. Decl.* [#9-1] ¶ 12. Both times, Respondent's counsel stated that Bruce Conway "intended to invoke his Fifth Amendment privilege against self-incrimination in response to questions asked of him during his scheduled testimony." *Id.* However, at no time before, during, or after those calls "did Mr. Conway or his counsel state that Mr. Conway had, or intended to invoke, a Fifth Amendment privilege not to produce documents in response to the SEC's document

subpoenas." *Id.* Rather, on June 21, 2022, and June 24, 2022, Bruce Conway's counsel provided status updates regarding the collection of documents for production. *Id.* On July 20, 2022, Bruce Conway's counsel sent correspondence to Petitioner stating in part that he was "prepared to respond to the subpoenas, subject to confirming that the investigation and subpoenas have been properly authorized and the relevant investigative Staff hold their appointments in compliance with all constitutional requirements and the relevant provisions of the federal securities laws." *See* [#1-14] at 2.

Ultimately Respondent Bruce Conway did not supplement his partial document production in connection with the March 16, 2022 subpoena or provide any documents in connection with the July 8, 2022 subpoena. *Hoke Decl.* [#1-2] ¶ 27. The SEC filed this enforcement action on December 2, 2022. There is no indication by the SEC in either the Application [#1] or supporting materials that Respondent Bruce Conway had ever raised a Fifth Amendment defense to document production prior to the filing of this action. However, according to Petitioner's counsel, at some unidentified time "[a]fter the SEC filed this subpoena enforcement action, Respondents' counsel raised for the first time their belief that their clients could rely on the act-of-production doctrine to refuse to produce any documents." *Hoke Supp. Decl.* [#9-1] ¶ 13. On June 23, 2023, Respondents filed their Response [#8] to the Application [#1]. As part of that filing, Respondent Bruce Conway formally responded to both subpoenas for the first time. *See* [#8-1]. To each and every production request in both subpoenas, he stated:

> Because the subject matter of this investigation, as described by my counsel above, could lead to criminal as well as civil liability, and in light of the nature of the records described above, which the SEC certifies are relevant to said investigation, any admission that I possess such records would tend to incriminate me, I must respectfully decline to provide any documentation in response to this request, if such documentation exists,

based on the protections afforded by the Fifth Amendment of the U.S. Constitution and Art. I § 10 of the Texas Constitution.

*See id.* at 4-10.[5]

"An individual may lose the right to claim the Fifth Amendment privilege . . . if [the] individual fails to assert it in a timely fashion." *United States v. Rivas-Macias*, 537 F.3d 1271, 1280 (10th Cir. 2008) (internal quotation marks omitted) (quoting *Maness v. Meyers*, 419 U.S. 449, 466 (1975)). Few cases directly address what "timely" means in the context of document production and assertion of this privilege. However, Petitioner directs the Court's attention to three informative decisions touching on this issue. *Reply* [#9] at 26-27.

First, in *United States v. Kirksey*, 631 F. Supp. 165, 165-66, 169 (S.D.N.Y. 1986), the respondent had argued that he was not required to respond to information sought by a summons issued by the Internal Revenue Service as part of a civil investigation because it would violate his Fifth Amendment rights. The court held that the respondent could not wait until contempt proceedings were underway to raise the privilege where the pro se respondent had appeared at a first enforcement hearing without raising it and where the respondent's counsel at a second enforcement hearing failed to raise it and had "stated that document production was underway." *Kirksey*, 631 F. Supp. at 170.

Second, in *United States v. Charles George Trucking Company, Inc.*, 642 F. Supp. 329, 334 (D. Mass. 1986), the defendants had argued in a case involving civil penalties that they were not required to respond to information requests by the Environmental

---

[5] Neither party addresses Art. I § 10 of the Texas Constitution in the briefs, and both rely solely on federal law to support their arguments. Because the Texas Constitution is not the subject of any party's argument, the Court does not address it in this Recommendation.

Protection Agency ("EPA") because it would violate their privilege against self-incrimination under the Fifth Amendment. The court there held:

> Here, the EPA provided the defendants with thirty days in which to respond or adequately justify their failure to respond. If the defendants had a reasonable apprehension that by answering the EPA's questions they could incriminate themselves, they could have raised their Fifth Amendment privilege within the thirty days prior to any liability attaching. Having failed to invoke the privilege, the defendants waived that protection and cannot now invoke it as justification[.]

*Charles George Trucking Co.*, 642 F. Supp. at 334.

Third, and much more recently, in *SEC v. Kiselak Capital Group, LLC*, No. 4:09-CV-256-A, 2011 WL 4398443, at *1 (N.D. Tex. Sept. 20, 2011), the individual defendant was the subject of an SEC complaint asserting violations of various securities-related statutes and regulations. The defendant had first raised his Fifth Amendment privilege 57 days after his original deadline to respond to written discovery requests propounded under Fed. R. Civ. P. 69(b). *Kiselak Cap. Grp.*, 2011 WL 4398443, at *4. The assertion of the privilege occurred "nearly two months after the interrogatories and requests for production were served[,] . . . sixteen months after he knew that his company was under investigation from the U.S. Attorney's Office, and twenty-one months after a final judgment had been issued against him." *Id.* at *5. The court noted that, "[g]enerally, in the absence of an extension of time or good cause, the failure to object to requests for discovery within the time fixed by the Federal Rules of Civil Procedure constitutes a waiver of any objection," including objections relating to Fifth Amendment privilege. *Id.* The court held that the defendant, in the absence of good cause, had waived his privilege. *Id.*

In addition to these cases, the Court takes note of *Davis v. Fendler*, 650 F.2d 1154, 1160 (9th Cir.1981), in which the Ninth Circuit Court of Appeals affirmed a district court's finding that the Fifth Amendment privilege had been waived when it was first raised "fifteen months after the interrogatories had been propounded." The privilege was asserted "long after [the defendant] knew he was under investigation, long after he had been indicted in the state court, long after his trial at which he testified in his own behalf, and months after he had been convicted in the state proceeding." 650 F.2d at 1160.

None of the cases discussed above are fully and completely on point with the situation here. However, all share elements of similarity with the present case. As in *Kirksey*, Respondent Bruce Conway and his counsel both indicated in-progress document production, with Respondent Bruce Conway actually providing some documents in response to the earlier March 16, 2022 subpoena. *See Hoke Decl.* [#1-2] ¶ 11; *Hoke Supp. Decl.* [#9-1] ¶ 12; *July 20, 2022 Letter from Respondents' Counsel to Petitioner* [#1-14] at 2; *Kirksey*, 631 F. Supp. at 170. As in *Charles George Trucking Company*, Respondent Bruce Conway could have asserted his Fifth Amendment privilege prior to the deadlines to respond to the subpoenas, but he did not. *See Mar. 16, 2022 Subpoena* [#1-6] at 1 (setting an April 1, 2022 response deadline); *July 8, 2022 Subpoena* [#1-11] at 1 (setting a July 22, 2022 response deadline); *Hoke Decl.* [#1-2] ¶ 24 (extending deadline to August 10, 2022); *Charles George Trucking Co.*, 642 F. Supp. at 334; *see also Hoke Decl.* [#1-2] ¶ 12 (obtaining counsel on or around April 11, 2022). As in *Kiselak Capital Group*, Respondent Bruce Conway has provided no good cause explaining his long-delayed assertion of the privilege. *See generally Response* [#8]; *Kiselak Cap. Grp.*, 2011 WL 4398443, at *5. As in *Davis*, Respondent Bruce Conway waited approximately

fifteen months after receipt of the first subpoena and the accompanying knowledge that he was under investigation, and approximately eleven months after receipt of the second subpoena, before formally asserting the privilege—despite both subpoenas making him aware of his Fifth Amendment rights. *See Mar. 16, 2022 Subpoena* [#1-6] at 23; *July 8, 2022 Subpoena* [#1-11] at 21; *Response to Subpoenas* [#8-1] at 4-10 (dated June 23, 2023); *Davis*, 650 F.2d at 1160. Simply put, Respondent Bruce Conway's invocation of the Fifth Amendment—first officially asserted nearly seven months after this enforcement action was filed and approximately 11-15 months after the subpoenas were issued— appears to have been "pure afterthought." *See Rogers*, 340 U.S. at 371. *See Mar. 16, 2022 Subpoena* [#1-6]; *July 8, 2022 Subpoena* [#1-11]; *Application* [#1] (filed December 2, 2022); *Response to Subpoenas* [#8-1] at 4-10 (dated June 23, 2023); *Rogers*, 340 U.S. at 371.

In short, all these cases lead to one conclusion: waiting an excessive amount of time to assert the Fifth Amendment privilege is impermissible. Given that Respondent Bruce Conway had counsel in this case at least since April 11, 2022, and that the document subpoenas contained Fifth Amendment advisements, the Court finds that Respondent Bruce Conway forfeited his right to assert a Fifth Amendment privilege in this case with respect to the document subpoenas.[6] Because the Court finds that Respondent Bruce Conway waived his right to invoke the Fifth Amendment with respect to the

---

[6] This finding of untimeliness applies equally to the document requests made to Respondents Elizabeth and Merritt Conway and is an additional basis for the Court's recommendation that the subpoenas be enforced. *See* [#1-12, #1-13].

document production, he must produce the documents sought by the two document subpoenas directed at him.[7] *See* [#1-6, #1-11].

### IV. Conclusion

Based on the foregoing,

IT IS HEREBY **RECOMMENDED** that the Order to Show Cause [#7] be **MADE ABSOLUTE**.

IT IS FURTHER **RECOMMENDED** that the Application [#1] be **GRANTED** and that Respondents be compelled to comply with the subpoenas in the investigation titled *In the Matter of Trading in the Securities of Cancer Genetics, Inc. See* [#1-6, #1-9, #1-11, #1-12, #1-13].

IT IS FURTHER **RECOMMENDED** that the Clerk of Court be directed to **CLOSE** this case.

IT IS FURTHER **ORDERED** that the Request for Status Conference [#13] is **DENIED**, given that the issues underlying the requested status conference have been addressed in this Recommendation.

IT IS FURTHER **ORDERED** that any party may file objections **within 14 days** of service of this Recommendation. In relevant part, Fed. R. Civ. P. 72(b)(2) provides that, "within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and

---

[7] Given the Court's conclusion that Respondent Bruce Conway has forfeited his Fifth Amendment privilege based on untimeliness, the Court need not address Petitioner's other arguments regarding the Fifth Amendment, including (1) whether Respondent Bruce Conway's blanket assertion of Fifth Amendment privilege is appropriate; (2) whether he forfeited his Fifth Amendment privilege by admitting to the trading under investigation; (3) whether he forfeited his Fifth Amendment privilege by making a partial production in response to the first document subpoena; or (4) whether the act-of-production doctrine is inapplicable to ten of the thirteen categories of documents sought in the two subpoenas. *See Reply* [#9] at 19-35.

recommendations. A party may respond to another party's objections within 14 days after being served with a copy." "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The objection must be "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute." *Id.* "[A] party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." *Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated: September 19, 2024                    BY THE COURT:

Kathryn A. Starnella
United States Magistrate Judge